1       IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 12-CR-00010-MSK
3
UNITED STATES OF AMERICA,
4
     Plaintiff,
5
vs.
6
CALVIN R. RILEY,
7
     Defendant.
8
_____

9
                    **REPORTER'S TRANSCRIPT**
10                 (Hearing on Change of Plea)

11
_____

12          Proceedings before the HONORABLE MARCIA S. KRIEGER,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 9:11 a.m., on the 21st day of June,

15   2012, in Courtroom A901, United States Courthouse, Denver,

16   Colorado.

17                          **APPEARANCES**

18          GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19   Suite 700, Denver, Colorado, 80202, appearing for the

20   plaintiff.

21          DARREN CANTOR, Attorney at Law, 1127 Auraria Parkway,

22   Suite 201-B, Denver, Colorado, 80204, appearing for the

23   defendant.

24   Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Paul Zuckerman, 901 19th Street,
25        Room A259, Denver, Colorado, 80294, (303) 629-9285

**PROCEEDINGS**

1

2        (In open court at 9:11 a.m.)

3                *THE COURT:*  Please be seated.

4        The Court is convened today in Case No. 12-cr-10,

5   which is encaptioned for purposes of today's hearing as the

6   United States of America vs. Calvin R. Riley.  The matter is

7   set down for a change in plea.

8                Could I have entries of appearance, please.

9                *MR. TILL:*  Good morning, your Honor.  Your Honor, I'm

10  Guy Till.  I'm an Assistant United States Attorney,

11  representing the Government.  Also present at counsel table is

12  ATF special agent Jason Cole, your Honor.

13                *THE COURT:*  Good morning and welcome.

14                *MR. TILL:*  Thank you, your Honor.

15                *MR. CANTOR:*  Good morning, your Honor.  Darren Cantor

16  appearing on behalf of Mr. Riley, who is present in custody.

17                *THE COURT:*  Good morning and welcome.  Are you all

18  ready to proceed?

19                *MR. CANTOR:*  We are, your Honor.

20                *MR. TILL:*  Yes, your Honor.

21                *THE COURT:*  Mr. Cantor, would you and your client

22  please approach the lectern.

23                This matter is before the Court for a change in the

24  defendant's plea, for re-arraignment pursuant to Rule 10, and

25  for consideration of and advisement with regard to the parties'

1    plea agreement in accordance with Rule 11, both of the Federal

2    Rules of Criminal Procedure.  The record reflects that the

3    defendant has been charged in a -- the original indictment

4    filed at Docket No. 1 on January 9, 2012, and that indictment

5    has been followed by a superseding indictment at Docket

6    No. 180.  In these indictments, Mr. Riley has been charged with

7    a number of counts, and he's entered a plea of not guilty to

8    all of those counts.

9          I understand that pursuant to the terms of the written

10   plea agreement, he now intends to change his plea to a plea of

11   guilty to Count 10 and Count 32.  And I believe that's in the

12   superseding indictment.  Is that right?

13         *MR. TILL:*  Your Honor, actually we're proceeding on

14   the original indictment with regard to Mr. Calvin Riley today.

15   And after the Court the accepts the defendant's plea of guilty,

16   if that goes through today, I would like to make my motion to

17   dismiss the superseding indictment as to him and to dismiss any

18   original counts in the original indictment as to the defendant,

19   also.

20         *THE COURT:*  Then would you re-arraign, please, on

21   Count 10 and 32 of the original indictment.

22         *MR. TILL:*  Yes, your Honor.

23         Sir, I'm going to go over Count 10 first.

24         Sir, are you the same Calvin R. Riley who is charged

25   by the grand jury in the indictment in Count 10 with possession

1    of a weapon while being a prohibited person?

2              *THE DEFENDANT:*  Yes, sir.

3              *MR. TILL:*  Sir, in this count, Count 10, the grand

4    jury alleges that on or about July 10, 2009, within the State

5    and District of Colorado, the defendant, Calvin R. Riley,

6    knowingly possessed a firearm and ammunition which had been

7    transported in interstate commerce, having been convicted

8    previously of a crime punishable by imprisonment for a term

9    exceeding one year, all in violation of Title 18 United States

10   Code Sections 922(g)(1) and 924(a)(2), possession of weapon by

11   a prohibited person.

12             Sir, do you understand that charge?

13             *THE DEFENDANT:*  Yes, sir.

14             *MR. TILL:*  Sir, today, how do you plead to Count 10?

15   Do you plead not guilty, or do you plead guilty?

16             *THE DEFENDANT:*  Guilty.

17             *MR. TILL:*  Thank you.

18             Sir, I'd now like to go over with you Count 32.  Sir,

19   in Count 32 the allegation is using and maintaining a drug-

20   involved premises.  Are you the same Calvin R. Riley who is

21   named as Defendant No. 12 in Count 32?

22             *THE DEFENDANT:*  Yes, sir.

23             *MR. TILL:*  Sir, the allegation in this case is that on

24   a date between on or about January 1, 2005, and on or about

25   December 30, 2011, within the State and District of Colorado,

1    the defendant, Calvin R. Riley, knowingly maintained and used a

2    place, to wit: premises informally known as the Hell's Lovers

3    Motor Cycle Club clubhouse for the purpose of using and

4    distributing quantities of a substance and mixture containing a

5    detectable amount of marijuana, a Schedule I controlled

6    substance, and quantities of a substance containing a

7    detectable amount of cocaine, a Schedule II controlled

8    substance, and intentionally aided and abetted another to

9    maintain and use said premises for the purposes of using and

10   distributing Schedule I and Schedule II controlled substances,

11   all in violation of Title 21 United States Code Section

12   856(a)(1) and (2) and (b) and Title 18 United States Code

13   Section 2, maintaining drug involved premises and aiding and

14   abetting another to do so.

15           Sir, do you understand that charge?

16           *THE DEFENDANT:*  Yes, sir.

17           *MR. TILL:*  Sir, today how do you plead to that

18   Count 32?  Do you plead not guilty, or do you plead guilty?

19           *THE DEFENDANT:*  Guilty.

20           *MR. TILL:*  Thank you, sir.

21           *THE COURT:*  Mr. Riley, as of this moment, you're not

22   bound by your pleas of guilty.  Indeed, you're not bound by

23   these pleas until I accept them.  You can change your mind at

24   any time during this hearing until I accept your pleas.

25           In order to accept your pleas of guilty, I have to be

1    sure that you understand the charges that have been brought

2    against you; that you understand your choices and you

3    understand the consequences that flow from those choices.  I

4    have to be sure that your decision to plead guilty is voluntary

5    and you haven't been pressured into it, and I have to find that

6    there is a factual basis to support your plea.

7          Throughout this hearing, I want you to let me know if

8    there are any questions you have or if there is anything you

9    don't understand.  In fact, if you'd like to confer with

10   Mr. Cantor at any time, let me know and we'll take a brief

11   recess so you can do so.

12         I begin by asking you a number of questions.  The

13   questions are not intended to trap, embarrass, insult, or

14   offend you.  The questions are important because your answers

15   are important.  It's your answers that I assess in order to

16   determine whether I can accept your plea or not.  Therefore,

17   you must answer my questions truthfully and completely.

18   Indeed, just like a witness, you take a solemn oath promising

19   to do that.  And if you don't, your answers can be used against

20   you if an action is brought against you for false statement or

21   perjury.

22         Do you understand?

23         *THE DEFENDANT:*  Yes, ma'am.

24         *THE COURT:*  Do you want to proceed?

25         *THE DEFENDANT:*  Yes.

1          *THE COURT:*  Would you please speak into the

2     microphone.

3          *THE DEFENDANT:*  Yes, ma'am.

4          *THE COURT:*  Would you please administer the oath.

5          *THE COURTROOM DEPUTY:*  Please raise your right hand.

6          (Defendant sworn.)

7                              **EXAMINATION**

8     *BY THE COURT:*

9     *Q.*  Mr. Riley, how old are you?

10    *A.*  51.

11    *Q.*  What level of school did you complete?

12    *A.*  To the 12th.

13    *Q.*  Do you have any difficulty reading or writing?

14    *A.*  No.

15    *Q.*  Within the last 24 hours, have you taken any medication?

16    *A.*  No, ma'am.

17    *Q.*  No medication?

18    *A.*  Well, I take antiinflammatory.

19    *Q.*  What have you taken in the last 24 hours?

20    *A.*  Because of my back, I hurt my back.

21         *MR. CANTOR:*  What.  Not why; what.

22         *THE DEFENDANT:*  I don't know what the name of it is.

23    I don't know what the name of it is.  It's just an

24    antiinflammatory.

25    *BY THE COURT:*

1    *Q.*  Is it a prescribed medication?

2    *A.*  Yes.

3    *Q.*  And what's the purpose of it?

4    *A.*  I hurt my back on my job.

5    *Q.*  What's it's supposed to do?

6    *A.*  Takes the swelling, I guess, out or --

7            *MR. CANTOR:*  He's been told it's a antiinflammatory,

8    your Honor.

9            *THE COURT:*  I need to know what it is.

10           *MR. CANTOR:*  It's something given by the Denver County

11   Jail.

12           *THE COURT:*  Is it prescribed?  That's what I just

13   asked.

14           *THE DEFENDANT:*  Yes, it's a prescribed

15   antiinflammatory and a sleeping pill.

16           *THE COURT:*  Oh, and a sleeping pill?

17           Mr. Cantor, maybe you'd like to confer with your

18   client.  I need to know what medications he's taken within the

19   last 24 hours.

20           *THE DEFENDANT:*  That's it.

21      (Discussion off the record between Mr. Cantor and

22   defendant.)

23           *MR. CANTOR:*  Your Honor, he does not have a

24   recollection of the name of the sleeping pill.  If the Court

25   wants, we can take a recess, reset this for some other time

1    today, whatever the Court wants to do, and I can dig into the

2    Denver County Sheriff's department and find out what it is

3    they're giving him.

4    *BY THE COURT:*

5    *Q.*  How long have you been taking this sleeping pill?

6    *A.*  For about three -- about three-and-a-half months.

7    *Q.*  Every night?

8    *A.*  Yes.

9    *Q.*  Any side effects from either of these drugs?

10   *A.*  No, ma'am.

11   *Q.*  Within the last 24 hours, have you used any drug or

12   alcohol?

13   *A.*  No, ma'am.

14   *Q.*  Have you ever been diagnosed with any form of mental

15   illness?

16   *A.*  No, ma'am.

17   *Q.*  Is there anything about the way you feel today physically,

18   mentally, or emotionally that makes it hard for you to

19   understand what is happening here?

20   *A.*  No, there isn't.

21   *Q.*  And you have clear mind?

22   *A.*  Yes, ma'am.

23   *Q.*  You have no hangover or fuzzy feeling from either of the

24   medications you've taken?

25   *A.*  No, ma'am, I don't.

1   Q.   Have you read and do you understand the charges against you

2   in the indictment?

3   A.   Yes, I have.

4   Q.   Have you discussed them with Mr. Cantor?

5   A.   Yes.

6   Q.   Have you asked him all the questions you had about them?

7   A.   Yes, I have.

8   Q.   Has he answered all your questions?

9   A.   Yes, he has.

10   Q.   Are any other questions you want to ask him?

11   A.   No, not right at this moment.

12         THE COURT:   Thank you.   Mr. Cantor, can you identify

13   the plea agreement for the record, please.

14         MR. CANTOR:   Your Honor, I have Court Exhibit 1 in

15   front of me.

16         THE COURT:   Thank you.

17   BY THE COURT:

18   Q.   Mr. Riley, would you please turn to Court Exhibit 1.

19         Have you read this document?

20   A.   Yes, ma'am.

21   Q.   Have you discussed it with your attorney?

22   A.   I sure did.   I have.

23   Q.   Have you asked him all the questions you had about it?

24   A.   Yes.

25   Q.   Has he answered all your questions?

1    A.   Yes, ma'am.

2    Q.   Are there any other questions you want to ask him?

3    A.   No, there isn't.

4    Q.   This document has a lot of legal language in it.  Did

5    you -- do you understand what it says and what it means?

6    A.   Yes.

7    Q.   Does it reflect all of your agreement with the Government?

8    A.   Yes, it does.

9    Q.   Did you sign it?

10   A.   Yes, I did.

11   Q.   Would you look at the last page of the document.  Is that

12   your signature?

13   A.   Yes, ma'am.

14   Q.   Thank you.

15            If you'll turn to page 2, paragraph D, you will see

16   that in addition to entering a plea of guilty, you are giving

17   up certain rights that you have with regard to appeal.  You are

18   giving up your right to appeal from any sentence in this case

19   except under limited circumstances: where the sentence exceeds

20   the statutory limit, where the sentence imposed exceeds the

21   sentencing guideline range, or the adjusted offense level is

22   greater than 14 in the guideline range and the sentence is

23   based on that.  Do you understand that?

24   A.   Yes, ma'am.

25   Q.   You also in this paragraph have waived your right to

 1    collaterally attack the judgment and the sentence and the

 2    prosecution in this matter except under very limited

 3    circumstances.  You can only pursue a writ of *habeas corpus* if

 4    there is an explicitly retroactive change in the applicable

 5    guidelines or sentencing statute, if you contend that you were

 6    denied constitutionally effective assistance of counsel, or if

 7    you claim that you were a victim of prosecutorial misconduct.

 8           Now, this provision also says that if the Government

 9    appeals the sentence that is imposed, you're released from the

10    waiver provision of it.  Do you understand that?

11    *A.*  Yes, ma'am.

12    *Q.*  Any questions about those provisions?

13    *A.*  No, ma'am.

14           *THE COURT:*  Thank you.

15           Mr. Cantor, does Exhibit 1 also bear your signature?

16           *MR. CANTOR:*  It does, your Honor.

17           *THE COURT:*  Did you review the plea agreement with

18    your client?

19           *MR. CANTOR:*  Your Honor, my concern with these -- this

20    particular question is that Rule 1.6 of the Rules of

21    Professional Conduct limits my ability to answer any question

22    that goes to anything relating to the representation of my

23    client.  I'm certainly -- I understand that the Court has

24    questions of Mr. Riley himself.  I just have a concern about

25    invading Rule 1.6.

1        THE COURT:  Mr. Cantor, did you review the plea

2   agreement with your client?  It requires a yes or a no answer.

3   It does not invade the communications that you had with your

4   client.

5        MR. CANTOR:  I understand, your Honor; but there is a

6   distinct and clear difference between the attorney/client

7   privilege and what's protected by Rule 1.6.  That's all I'm

8   indicating.

9        THE COURT:  All right.  All right.  Without your

10   statement that, indeed, you reviewed this agreement, I cannot

11   accept the plea.  What would you like to do?

12        MR. CANTOR:  Well, in light of the box that I'm in

13   here, your Honor, I will answer the Court's question:  Yes, I

14   did.

15        THE COURT:  All right.  Did you answer all of his

16   questions?

17        MR. CANTOR:  Yes, I did, again with the same *caveat*

18   that I'm objecting to this question.

19        THE COURT:  Are you satisfied that he understands the

20   contents of Exhibit 1?

21        MR. CANTOR:  Again with the caveat that I object, yes,

22   I am.

23        THE COURT:  Did you review the discovery in this case?

24        MR. CANTOR:  Your Honor, this is -- yes, I did, again

25   with the objection.

1          *THE COURT:*  And does the discovery you reviewed

2     comport with the facts recited in the plea agreement?

3          *MR. CANTOR:*  Preserving my objection, yes, it does,

4     your Honor.

5          *THE COURT:*  Thank you.

6          Mr. Till, does Exhibit 1 also bear your signature?

7          *MR. TILL:*  It does, your Honor.

8          *THE COURT:*  Thank you.

9     *BY THE COURT:*

10    *Q.*  Mr. Riley, in Exhibit 1, there is a statement of what the

11    Government believes it could prove if this matter were to go to

12    trial.  By entering into this plea agreement, you are admitting

13    that these facts are true.  I'll treat them as true for

14    purposes of considering your plea and for purposes of

15    sentencing.  Therefore, I'm going to ask Mr. Till as the

16    Government's attorney to recite the facts that you have agreed

17    to.  Listen closely to what he says, because when he finishes,

18    I'm going to ask you whether these facts are true, and you must

19    tell me if you have any disagreement with the facts as recited

20    by Mr. Till.  Do you understand?

21         *THE DEFENDANT:*  Yes, ma'am.

22         *THE COURT:*  Thank you.

23         Mr. Till, would you recite the facts upon which the

24    parties agree.

25         *MR. TILL:*  Yes, your Honor.

1            If it please the Court and Counsel, your Honor, with

2      regard to Count 10, on or about July 10, 2009, within the State

3      and District of Colorado, near 222 Logan Street, Denver,

4      Colorado, the defendant, Calvin R. Riley, knowingly possessed a

5      firearm, to wit: a four-shot derringer pistol which Calvin R.

6      Riley proceeded to sell to a confidential human source of

7      information working with ATF agents who were monitoring the

8      transaction, said pistol having moved in and affecting

9      interstate commerce and Calvin R. Riley having been convicted

10     previously of a Colorado state felony punishable by

11     imprisonment for a term exceeding one year, to wit -- and there

12     is a typographical mistake in the plea agreement.  I didn't

13     notice it.  So it should be to wit, your Honor, Denver District

14     Court Case No. 1996-CR-2798, possession of a controlled

15     substance, having been sentenced on or about December 12, 1996,

16     and as of July 10, 2009, being on bond awaiting sentence for a

17     felony offense, to wit: having been found guilty by a jury on

18     or about April 29, 2009, in Arapahoe County District Court Case

19     No. 2008-CR-595 of criminal attempt to influence public

20     servants, a Colorado state felony, all in violation of Title 18

21     United States Code 922(g), which defines possession of a weapon

22     by a prohibited person.

23            With regard to Count 32, the factual basis agreed to

24     includes the following:  The Hell's Lover Motor Cycle Club

25     clubhouse was the location where illegal drugs, including

1    cocaine and marijuana, were used and shared.  Between

2    2005 -- excuse me -- January, 2005, and January, 2012, as

3    witnessed in part by an ATF undercover special agent and a

4    number of confidential human sources of information working

5    with law enforcement, on Thursday, Friday, Saturday and nights,

6    the premises informally known as Hell's Lover Motor Cycle Club

7    clubhouse, located in the Denver metropolitan area within the

8    District of Colorado, would be the scene of gatherings where

9    Hell's Lover Motor Cycle Club members and visitors consumed and

10   shared marijuana and cocaine.  The Hell's Lover Motor Cycle

11   Club clubhouse was the scene of cocaine and/or marijuana

12   consumption by 30 to 40 persons on any given Friday or Saturday

13   night.  The routine and repeated use of marijuana and cocaine

14   at the Hell's Lover Motor Cycle Club clubhouse was known to the

15   defendant.  The defendant knew marijuana was shared and used

16   routinely and regularly at the Hell's Lover Motor Cycle Club

17   clubhouse.  Defendant used marijuana at the clubhouse.

18           In October of 2010, the defendant was a fully patched

19   and christened Hell's Lover Motor Cycle Club member.  The

20   defendant had a position of leadership within Hell's Lover

21   Motor Cycle Club.  The Hell's Lover Motor Cycle Club clubhouse

22   was supported and maintained by purchases of beverages from the

23   Hell's Lover Motor Cycle Club bar and dues paid by the

24   defendant and other members of the Hell's Lover Motor Cycle

25   Club, including fully patched and christened members,

1    probationary members, prospective members, and, quote,

2    "property," quote/unquote, female associates.  Clubhouse

3    expenses such as rent and utilities were paid by the Hell's

4    Lover Motor Cycle Club Colorado chapter treasurer using

5    proceeds from purchases of beverages and Hell's Lover Motor

6    Cycle Club dues paid by the defendant and other members.

7         For purposes of relevant offense conduct, on or about

8    January 29, 2009, within the District of Colorado, Calvin Riley

9    provided a confidential human source with approximately 6 grams

10   of a substance containing a detectable amount of cocaine.

11        On or about July 2, 2009, within the District of

12   Colorado, Calvin Riley provided a confidential human source

13   with approximately 13 grams of a substance containing a

14   detectable amount of cocaine.

15        The statement of facts herein does not preclude -- I'm

16   sorry.  These are not facts.  Your Honor, that concludes the

17   statement of facts.

18        *THE COURT:*  Thank you.

19   *BY THE COURT:*

20   *Q.*  Mr. Riley, are these facts true?

21   *A.*  Yes, ma'am.

22   *Q.*  Let's talk a little bit about penalty.

23        The statutory penalty for violation of 18 U.S.C.

24   Section 922(g)(1) is a maximum of ten years of imprisonment, a

25   maximum fine of $250,000.  Both can be imposed.  A term of

1    imprisonment can be followed by a term of supervised release of

2    up to three years.   There is a $100 mandatory special

3    assessment fee.

4         The maximum penalty for violation of 21 U.S.C. Section

5    856(a)(1) and 2, the count charged in Count 32, is 20 years of

6    imprisonment, a fine of up to $500,000.   Both can be imposed.

7    A term of supervised release of up to tree years can follow a

8    term of imprisonment, and a $100 special assessment is mandated

9    by statute.

10        Sentences on two different counts can either be

11   concurrent or consecutive.   Terms of supervised release are

12   always concurrent.

13        Now, in the federal system, we don't measure prison

14   terms in terms of years; we measure it in terms of months.

15   There is no automatic reduction, there is no parole.   That

16   means that every month you're sentenced to serve, you'll serve.

17        There are a limited number of ways you can reduce a

18   sentence.   And some of those you have given up in your plea

19   agreement.   First, a sentence can be reduced on a motion

20   brought by the Government shortly after a judgment's entered.

21        Second, it can be reduced as a result of a successful

22   appeal and resentencing; but as you will recall, you have given

23   up your right to appeal from the sentence in all but a few

24   circumstances.

25        A third way to challenge a sentence is through a

1    petition for a writ of *habeas corpus*.  But again, this is a

2    collateral attack, and you've given that up right in your plea

3    agreement as well except under limited circumstances.

4          And finally, the Bureau of Prisons has discretion, if

5    it chooses to exercise it, to give you credit, good time

6    credit, against your prison term.  Its discretion is limited to

7    54 days per year, and it is not obligated to provide good time

8    credit.  It can if it chooses to.  And whether it chooses to

9    depends upon your compliance with the rules and regulations of

10   the institution where you're housed.

11         Now, after completion of a prison term, there is a

12   term of supervised release.  And you will remember that

13   supervised release with regard to each of these counts can be

14   as long as three years, but the terms run concurrently.  That

15   means that the supervised release term here is a minimum of

16   three years.  But during those three years, if a supervised

17   release term is imposed, you will be required to adhere to a

18   number of conditions that regulate your behavior.  The

19   conditions are mandatory.  That means you have to follow all of

20   them all of the time.  They fall into two different categories,

21   standard conditions, which apply to all terms of supervised

22   release, and special conditions, which are unique to you and to

23   your particular circumstances.

24         As to the standard conditions, you might guess, and

25   accurately so, there are lots of those.  I'm only going to

1    bring three to your attention, but you should understand there
2    are many more.

3         You cannot commit any new crimes, state, federal, or
4    local.  You cannot use, sell, or possess any illegal
5    substances.  And you cannot use, sell, or possess any
6    prohibited firearms.

7         Now, as I said, there are a host of other standard
8    conditions.

9         Then there can be special conditions.  And the special
10   conditions are unique to you and to your particular
11   circumstances.  I can't always guess with any degree of
12   certainty what special conditions will be appropriate at this
13   juncture in case; but due to the nature of the charges to which
14   are you pleading guilty, I'm going to suspect that at a minimum
15   you'll be required to participate in a substance abuse
16   rehabilitation program.  If you have an alcohol issue, you may
17   also have to participate in an alcohol rehabilitation program.
18   And if you have mental health issues now or you develop some
19   while you're in prison, you may be required to have a mental
20   health assessment, and you may be required to participate in
21   mental health treatment.

22        Now, with regard to special conditions, if you
23   participate in special programs, you may be required to pay for
24   them.

25        What's important to know about all these conditions is

1   they're enforced exactly the same way.  A probation officer

2   monitors your compliance.  And if you do not comply with all of

3   the conditions all of the time, the probation officer through

4   the U.S. Attorney can bring you back here to this courtroom or

5   another courtroom and ask to have your supervised release term

6   revoked and have you sent back to prison for another term.

7          Now, the penalty that will ultimately be imposed here

8   is not just a function of the statutes of conviction.  In

9   deciding what penalty is appropriate, there are other statutes

10   that come into play, probably the most important of which is 18

11   U.S.C. Section 3553.  It governs sentencing in all criminal

12   cases.  It obligates me to impose a sentence that is sufficient

13   but not greater than necessary to satisfy particular

14   objectives: to promote respect for the law, to provide just

15   punishment, to adequately deter criminal conduct, to protect

16   the public from further crimes by the defendant -- that's

17   you -- and to provide you with needed educational or vocational

18   training, medical care, or other correctional treatment in the

19   most effective manner.

20          In order to fashion a sentence that meets these

21   objectives, this same statute tells me to consider particular

22   factors: the nature and circumstances of the offense, your

23   history and characteristics, the kinds of sentences that are

24   available, what the Federal Sentencing Guidelines require, the

25   need to avoid unwarranted sentence disparities among defendants

1    with similar records found guilty of similar conduct, and in

2    the appropriate case I consider restitution.

3           Now, I know that your attorney and the Government's

4    attorney have calculated in Exhibit 1 their estimation of the

5    sentencing guideline range under the Federal Sentencing

6    Guidelines.  This calculation begins on page 9 of Exhibit 1.

7    There are several things that you need to know about this

8    calculation.  First of all, it's not binding on the Court.

9    There is no guaranteed sentence here.

10          Secondly, this is an estimate based on what the

11   attorneys knew at the time that you entered into the plea

12   agreement; but at the time of sentencing, we're not going to be

13   working from this plea agreement, Exhibit 1; we're going to be

14   working from another document and someone else's calculation as

15   to how the guidelines apply.  That document is called the

16   presentence investigation report, and its author is a probation

17   officer of the Court.

18          You and your attorney will meet with the probation

19   officer before sentencing and provide information to the

20   probation officer, and the probation officer will gather

21   information from other sources as well.  The report that the

22   officer prepares has a calculation under the guidelines, and

23   you and your attorney and the Government's attorney will have

24   an opportunity to review the entire report, including that

25   calculation.

 1          If you think that there is an error in the calculation

 2     in that report or anything else in the report, you can bring

 3     that to the attention of the probation officer.  And if the

 4     probation officer doesn't adequately address your concern, you

 5     can raise the issue at the time of sentencing.

 6          Now, the last thing to remember about this calculation

 7     is that the calculation under the guidelines is only one factor

 8     that I consider in determining your sentence.  It's an

 9     important factor, but it's not the only factor.  It's a

10     starting point, but it's not necessarily the ending point.  And

11     that is because I'm required to impose a sentence that meets

12     those sentencing objectives I recited a few minutes ago.  And

13     if the calculation under the guidelines doesn't satisfy those

14     objectives, I can impose a non-guideline sentence.

15          Now, sometimes people call that a variant sentence.

16     Sometimes they call it a statutory sentence.  But it all means

17     the same thing.  It's a sentence outside the guideline range.

18     And a sentence outside the guideline range can be higher than

19     the guideline range or lower than the guideline range, whatever

20     is necessary to satisfy those sentencing objectives.

21          As I said, your sentencing hearing will occur some

22     time from now.  And before that hearing, you'll meet with the

23     probation officer to provide information to go in the

24     presentence report.

25          Please don't be confused by the term probation

1   officer.  It has nothing to do with the penalty to be imposed.

2   It's simply the title of the person preparing the report.

3          At sentencing, your attorney and the Government's

4   attorney will each get the opportunity to make an argument as

5   to the appropriate sentence to be imposed.  And that might

6   include addressing concerns about the presentence report,

7   whether there should be a guideline sentence or a non-guideline

8   sentence, where in the guideline range the sentence should be

9   imposed, or any of the ancillary components of the sentence.

10          You will have an opportunity to make a statement, but

11   no one else will have an opportunity to make a statement on

12   your behalf at the hearing.  If there are folks that you'd like

13   to have say something about you, your history or your

14   characteristics that are factors that I consider in imposing

15   sentence, they can write a letter to the probation officer, not

16   to me, so that that letter is included in the presentence

17   report.  And I will review those letters in conjunction with

18   the report.

19          Do you have any questions about the objectives or

20   factors that will be evaluated in determining your sentence?

21   A.  No, ma'am.

22   Q.  Do you understand the maximum sentence that can be imposed?

23   A.  Yes, ma'am.

24   Q.  Do you understand that these are felony convictions?

25   A.  Yes, ma'am.

1  *Q.*  Do you understand that if I accept your pleas, they may

2  have collateral consequence impacting your civil rights?

3  *A.*  Yes, ma'am.

4  *Q.*  Do you understand that you may lose your right to vote?

5  *A.*  Yes, ma'am.

6  *Q.*  Serve on a jury?

7  *A.*  Yes, ma'am.

8  *Q.*  Hold elective office?

9  *A.*  Yes, ma'am.

10  *Q.*  And obtain any number of licenses issued by governmental

11  authorities?

12  *A.*  Yes, ma'am.

13  *Q.*  Do you understand that the sentence I impose may be more

14  severe than the calculations in Exhibit 1?

15  *A.*  Yes, ma'am.

16  *Q.*  Do you understand that if I accept your plea today, no

17  matter what the sentence, is you won't be able to withdraw it

18  at the time of sentencing?

19  *A.*  Yes, ma'am.

20  *Q.*  Do you have any questions about sentencing?

21  *A.*  No, I don't, ma'am.

22  *Q.*  I'm sorry.  I didn't hear you.

23  *A.*  No, I don't, ma'am.

24        *THE COURT:*  Thank you.

25        Then let's turn to your statement in advance.  Could

1    you identify that for the record, Mr. Cantor?

2         *MR. CANTOR:*  Your Honor, we have Court Exhibit 2 in

3    front of us.

4         *THE COURT:*  Thank you.

5    *BY THE COURT:*

6    *Q.*  Mr. Riley, would you look Court Exhibit 2, please.  Have

7    you read this document?

8    *A.*  Yes, ma'am.

9    *Q.*  Have you discussed it with your attorney?

10   *A.*  Yes, ma'am, I did.

11   *Q.*  Have you asked him all the questions you had about it?

12   *A.*  Yes, ma'am.

13   *Q.*  Has he answered all your questions?

14   *A.*  Yes, he has.

15   *Q.*  Are there any other questions that you would like to ask

16   him?

17   *A.*  No, ma'am.

18   *Q.*  Would you turn to the last page of the document, please.

19        Did you sign it?

20   *A.*  Yes, ma'am.

21   *Q.*  Is that your signature on that document?

22   *A.*  Yes, it is.

23        *THE COURT:*  Thank you.  And Mr. Cantor, did you sign

24   this as well?

25        *MR. CANTOR:*  Your Honor, I have the same 1.6 Rules of

1   Professional Conduct Section 1.6 concerns with regard to these

2   statements.  I understand the Court's previous ruling, and I

3   accept the Court's previous ruling.  I will sign it now,

4   maintaining my objection.

5          THE COURT:  I will overrule your objection based upon

6   several things.  First of all, Local Rule 11.1D requires the

7   submission of a statement by defendant in advance of a plea of

8   guilty and requires that counsel sign it.

9          No. 2, the professional conduct rule you refer to

10  provides in subpart A that a lawyer shall not reveal

11  information relating to the representation of a client unless

12  the client gives informed consent, the disclosure is impliedly

13  authorized in order to carry out the representation, or the

14  disclosure is permitted by paragraph B.  Paragraph B provides

15  "A lawyer may reveal information relating to the representation

16  of a client to the extent the lawyer reasonably believes it is

17  necessary to satisfy" any one of a number of subparts, and

18  subpart 7 provides "to comply with other law or court order."

19         It is the determination of this court that that

20  subsection of the rule of professional responsibility requires

21  you to both sign this document and to answer this court's

22  questions.

23         MR. CANTOR:  I understand the Court's ruling.

24  BY THE COURT:

25  Q.  Mr. Riley, let's go over the constitutional rights you're

1    giving up today by making your plea of guilty.

2         Under the United States Constitution, you have a

3    number of rights and protections.  And you're giving up some of

4    those today by making your plea of guilty.

5         The Constitution first guarantees to you that when

6    charges like this are brought against you, you have a right to

7    a jury trial in order to determine whether the Government can

8    prove them.

9         Now, ordinarily that jury trial would take place in

10   this courtroom.  The jury would sit to my left in the jury box.

11   12 people would serve on that jury.  You and your attorney and

12   the Government's attorney would all participate in the

13   selection of the people who would serve on the jury.

14        You and the Government could excuse any juror who

15   could not be fair and impartial and any juror who was either

16   unwilling or unable to follow the law.

17        In addition, you would get to excuse up to ten people

18   and the Government could excuse up to six people without giving

19   any reason whatsoever.

20        Once the jurors are selected, they all take a solemn

21   oath promising to consider only the evidence presented here in

22   the courtroom and to follow the instructions of law that I give

23   them.

24        One of the instructions I give them tells them that in

25   order to convict you of the charges brought against you, they

1    must reach a unanimous decision, satisfying themselves that the

2    Government has proven every element of the charge beyond a

3    reasonable doubt.  If any one of them has a reasonable doubt,

4    you cannot be convicted.

5           Now, during the trial process, you have a number of

6    other constitutional rights.  For example, you have the right

7    to remain silent.  This right has several aspects.  It means

8    you don't have to answer any questions.  You're not required to

9    say anything during the trial.  It also prohibits the jury from

10   considering your silence in determining whether Government has

11   proven the charge or charges against you, and it does not

12   restrict your attorney from challenging all of the Government's

13   evidence, cross-examining its witnesses, and making arguments

14   both to the jury and to me.

15          Now, because this is a right, you can waive it either

16   before or at trial.  You can testify if you want to.  You can

17   put on evidence if you want to.  And, in fact, if there are

18   witnesses that you'd like to call to testify on your behalf and

19   they're reluctant to come forward, I would compel them to come

20   forward.

21          Now, you're also entitled under the Constitution to be

22   represented by an attorney.  And where you can't afford an

23   attorney, an attorney will be appointed to represent you

24   without any cost to you.

25          I know that Mr. Cantor has represented you thus far in

 1    this case, and I know him to be a competent and able attorney;

 2    so I expect that if you would prefer to go to trial, he would

 3    represent you ably and well at trial.

 4            And if you went to trial and you were convicted, you

 5    could appeal both from your conviction and from your sentence;

 6    but today, by entering this plea of guilty, you are giving up

 7    your right to a jury trial and all the rights that go with it.

 8    You will not be able to appeal from your conviction, and for

 9    the most part you will not be able to appeal from your

10    sentence.

11            Do you understand that you will waive your right to a

12    jury trial and other constitutional rights associated with it

13    if you proceed with your plea of guilty today?

14    A.   Yes, ma'am.

15    Q.   Is that what you want to do?

16    A.   Yes.

17    Q.   Where are you currently being housed?

18    A.   Denver City Jail.

19    Q.   Have you been housed anywhere else?

20    A.   No, ma'am.

21    Q.   Have you been treated all right?

22    A.   Yes.

23    Q.   Has anybody pressured you to make this plea today?  And

24    before you answer that question, let me define "anybody."  It

25    has the broadest definition possible.  It includes your family

 1    and your friends and your neighbors and strangers and enemies

 2    and associates and folks who are codefendants in this case or

 3    the attorneys or people here at the courthouse or people at the

 4    institution where you're housed or anybody else.  Has anybody

 5    pressured you to make this plea today?

 6    *A.*  No, ma'am.

 7    *Q.*  Has anybody promised you something that isn't in the plea

 8    agreement?

 9    *A.*  No, ma'am.

10    *Q.*  Have you had enough time to review and consider and discuss

11    your plea and plea agreement with Mr. Cantor?

12    *A.*  Yes, ma'am, I have.

13    *Q.*  Are you satisfied with him as your attorney?

14    *A.*  Yes.

15    *Q.*  Do you have any concerns, complaints, or criticism about

16    the legal representation you've received?

17    *A.*  No, I don't.

18    *Q.*  Do you want to ask Mr. Cantor any questions?

19    *A.*  I just -- I didn't understand the one thing that you were

20    asking him at first that you didn't --

21          *THE COURT:*  Why don't you confer with him for a minute

22    here.

23          *MR. CANTOR:*  Thank you.

24       (Discussion off the record between Mr. Cantor and

25    defendant.)

1        *MR. CANTOR:*  Thank you, your Honor.

2    *BY THE COURT:*

3    Q.  Mr. Riley, did you get your question answered?

4    A.  Yes, ma'am.

5    Q.  All right.  Do you have any questions for me?

6    A.  No, I don't, your Honor.

7    Q.  Well, then, now is the time to finalize your decision.

8    This plea and plea agreement, the one you and I have been

9    discussing:  Do you still want to proceed with it?

10   A.  Yes, ma'am.

11   Q.  You still want to proceed with your plea of guilty to

12   Counts 10 and 32 in the original indictment?

13   A.  Yes, ma'am.

14       *THE COURT:*  Mr. Cantor, any reason not to accept the

15   plea and plea agreement?

16       *MR. CANTOR:*  Not to my knowledge.

17       *THE COURT:*  Mr. Till?

18       *MR. TILL:*  No reason not to accept it, your Honor.

19       *THE COURT:*  Thank you.

20       Then at this time, Mr. Till, do you care to make your

21   motion for dismissal of the other charges?

22       *MR. TILL:*  Yes, your Honor.  At this time I would like

23   to make an oral motion to dismiss Count 9 of the indictment and

24   Count 31 of the indictment, and I would like to make a motion

25   to dismiss the superseding indictment in its entirety as to

1    Mr. Riley.

2         *THE COURT:*  Do Counts 10 and 32 of the original

3    indictment represent the seriousness of the actual behavior?

4         *MR. TILL:*  Yes, your Honor, they do.

5         *THE COURT:*  And would the sentencing objectives be

6    undermined in any way by acceptance of or by granting this

7    motion to dismiss?

8         *MR. TILL:*  No, your Honor.  The -- they would not be

9    undermined in any way.

10         *THE COURT:*  All right.  Thank you.

11         Mr. Cantor, I assume you have no objection.

12         *MR. CANTOR:*  Correct, your Honor.

13         *THE COURT:*  Thank you.

14         Then based upon the record made in open court today --

15    Before I do that, let me ask you:  Is there any supplementation

16    of the record that you'd like to make?

17         *MR. TILL:*  Not from the Government, your Honor.

18         *MR. CANTOR:*  No, thank you, your Honor.

19         *THE COURT:*  Thank you.

20         Then based on the record made in open court today in

21    this case and this hearing, Case No. 12-cr-10, encaptioned for

22    purposes of this hearing as the United States of America vs.

23    Calvin R. Riley, I hereby find that the defendant is fully

24    competent to enter an informed plea.  He's been represented

25    through the course of this case and this proceeding, and he has

1     no objection, criticism, or complaint as to the representation

2     he's received.  He's aware of the nature of the charges against

3     him and the effects and consequences of his plea of guilty.  He

4     has knowingly and voluntarily waived fundamental constitutional

5     rights, including his right to a jury trial.  He understands

6     that the penalty that will be imposed will be based in part on

7     the facts stated in this plea agreement and that the penalty

8     may exceed the calculations in the plea agreement.

9         His plea of guilty is voluntary and knowingly made,

10    and the charge and plea is supported by an independent basis in

11    fact.

12         Pursuant to the terms of the written plea agreement,

13    the Government has orally moved to dismiss Counts 9 and 31 in

14    the original indictment and all counts against Mr. Riley in the

15    superseding indictment.

16         Good cause exists to grant the Government's motion to

17    dismiss.  The charges to which he is pleading guilty adequately

18    reflect the seriousness of the actual offense behavior, and the

19    agreement does not undermine the statutory purposes of

20    sentencing.

21         It's therefore ordered that Court Exhibits 1 and 2 are

22    received, the plea as made in open court today is accepted, and

23    the defendant is adjudged guilty as charged in Counts 10 and 32

24    of the original indictment.

25         Counts 9 and 31 of the original indictment and all

1    counts against Mr. Riley in the superseding indictment are

2    dismissed; however, the effect of this order is stayed until

3    the time of sentencing.

4           The probation department will conduct a presentence

5    investigation and submit a presentence report as required by

6    Rule 32.  And the defendant, with the assistance of counsel,

7    will participate in the investigation and cooperate fully with

8    the probation department.

9           You've set a sentencing hearing.

10          *MR. CANTOR:*  We picked a new date this morning, your

11   Honor.

12          *THE COURT:*  For October 1 at 1:30; is that correct?

13          *MR. CANTOR:*  Correct.

14          *THE COURT:*  All right.  That works for everybody?

15          *MR. TILL:*  Yes, your Honor.

16          *THE COURT:*  Thank you.  Then that will be the

17   sentencing hearing.

18          The jury trial on the charges against Mr. Riley was

19   vacated at the time of the filing of disposition.  Any pending

20   motions we need to address?

21          *MR. CANTOR:*  Not to my knowledge.

22          *MR. TILL:*  I don't think so, your Honor.

23          *THE COURT:*  Okay.  Any other business by the

24   Government or the defendant?

25          *MR. TILL:*  Not by the Government, your Honor.

1          MR. CANTOR:  No, thank you.

2          THE COURT:  Thank you, then, Mr. Till; thank you,

3   Mr. Cantor; thank you to our marshal's staff and our court

4   staff.  That will conclude this hearing.  Mr. Riley will be

5   remanded to the care and custody of the United States Marshal's

6   Service pending sentencing, and we'll stand in recess.

7          (Recess at 9:57 a.m.)

8                          *   *   *   *   *

9                        **REPORTER'S CERTIFICATE**

10      I certify that the foregoing is a correct transcript from

11   the record of proceedings in the above-entitled matter.  Dated

12   at Denver, Colorado, this 20th day of August, 2013.


14                                      *S/Paul A. Zuckerman*
                                         Paul A. Zuckerman

15