IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CALVIN R. RILEY,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
Sentencing Hearing

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER,
Judge, United States District Court for the District of
Colorado, commencing at 1:31 p.m., on the 1st day of October,
2012, in Courtroom 901A, United States Courthouse, Denver,
Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street,
Suite 700, Denver, Colorado, 80202, appearing for the
plaintiff.

    DARREN CANTOR, Attorney at Law, 1127 Auraria Parkway,
Denver, Colorado, 80204, appearing for the defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | *THE COURT:*  Court is convened today in Case No. |
| 3 | 12-cr-10, encaptioned the United States of America v. Calvin R. |
| 4 | Riley.  The matter is set down for sentencing. |
| 5 | Could I have entries of appearance, please. |
| 6 | *MR. TILL:*  Good afternoon, Your Honor.  Your Honor, |
| 7 | I'm Guy Till.  I'm an assistant U.S. attorney, representing the |
| 8 | Government this afternoon, Your Honor. |
| 9 | *THE COURT:*  Good afternoon and welcome. |
| 10 | *MR. TILL:*  Thank you. |
| 11 | *MR. CANTOR:*  Good afternoon, Your Honor.  Darren |
| 12 | Cantor on hearing on behalf of Mr. Riley, who is in custody. |
| 13 | *THE COURT:*  Good afternoon and welcome. |
| 14 | Is the Government ready to proceed. |
| 15 | *MR. TILL:*  We are, Your Honor. |
| 16 | *THE COURT:*  Mr. Cantor, would you and Mr. Riley |
| 17 | approach the lectern. |
| 18 | This matter is before the Court for purposes of |
| 19 | sentencing.  The record reflects that the defendant was charged |
| 20 | in a 32-count Indictment filed on January 9, 2012.  He was |
| 21 | charged in Count 9 with possession with intent to distribute |
| 22 | cocaine, in violation of 21 U.S.C. Section 841(a)(1) and |
| 23 | (b)(1)(C); in Count 10 with being a prohibited person in |
| 24 | possession of a firearm and aiding and abetting in violation of |
| 25 | 18 U.S.C. Sections 922(g)(1), 924(a)(2) and 2; in Count 31 with |

1    conspiracy to use and maintain drug-involved premises in

2    violation of 21 U.S.C. Sections 846, 856(a)(1), (2) and (b); in

3    Count 32 with using and maintaining drug-involved premises and

4    aiding and abetting in violation of 21 U.S.C. Section

5    856(a)(1), (2) and (b) and 18 U.S.C. Section 2.  There was also

6    an unnumbered forfeiture allegation in accordance with 18

7    U.S.C. Section 3665.

8              He entered pleas of not guilty to all of those

9    charges.  And on June 21, 2012, changed his plea of guilty to

10   Counts 10 and 32 of the Indictment.  The Court accepted his

11   plea at that time, and he was adjudged guilty as charged in

12   those two counts.  The Government orally moved to dismiss the

13   remaining counts of the Indictment and Superseding Indictments,

14   and that motion was granted, but the effect of the order stayed

15   until the time of sentencing, which is today.

16             In preparation for today's hearing, I've had the

17   opportunity to review a number of documents.  Docket No. 610,

18   which was the first presentence report; Docket No. 632, which

19   was Mr. Riley's response; Docket No. 641, a request for a

20   non-guideline sentence by Mr. Riley; Docket No. 646, a response

21   by the Government; Docket 647, the final presentence report;

22   648, an addendum to that report; and 667, additional documents

23   submitted by Mr. Riley's attorney, which have -- which I have

24   directed be filed with restricted access.

25             Let me inquire of you, counsel, whether you and the

 1  defendant have had adequate opportunity to review and consider

 2  those documents.

 3          *MR. CANTOR:*  We have, Your Honor.

 4          *MR. TILL:*  The Government also has had time, Your

 5  Honor.

 6          *THE COURT:*  Are there any other documents I should be

 7  considering?

 8          *MR. TILL:*  Not for the Government, Your Honor.

 9          *MR. CANTOR:*  One second, Your Honor.

10          Nothing, thank you, Your Honor.  Just wanted to

11  confirm.

12          *THE COURT:*  Thank you.

13          Any dispute as to the factual contents of the

14  presentence report?

15          *MR. TILL:*  Not by the Government, Your Honor.

16          *MR. CANTOR:*  No, Your Honor.

17          *THE COURT:*  Any dispute as to the calculation of the

18  sentence under the federal sentencing guidelines as set forth

19  in the report?

20          *MR. TILL:*  Not by the Government, Your Honor.

21          *MR. CANTOR:*  No, thank you, Your Honor.

22          *THE COURT:*  Any request for a departure?

23          *MR. CANTOR:*  None, thank you, Your Honor.

24          *MR. TILL:*  None from the Government, Your Honor.

25          *THE COURT:*  All right.  Then we'll move to the request

1    by the defendant for a variance.

2         MR. CANTOR:  Your Honor, we requested a statutory

3    sentence in this case.  There are a couple of things that I did

4    want to bring to the Court's attention in addition to what was

5    filed.

6         First of all, it has come to my attention that the

7    office of the state public defender has now filed an appeal in

8    that underlying Arapahoe County court case, the 08-cr-595.  As

9    the Court may have noticed in attachment 1 to Document 641, on

10   the top page of that, it indicated a minute order on October 2,

11   2009, that the office of the state public defender was

12   appointed for appeal purposes.  Through the course of

13   investigating this case, it came to our attention that that

14   minute order and that order appointing the state public

15   defender was never communicated to anyone outside the

16   courtroom.  And since he was represented by private counsel at

17   that hearing, private counsel essentially withdrew, the public

18   defender was appointed, but nobody told the public defender.

19        So when I started notifying them earlier this year,

20   they started digging in.  They have now filed documents in the

21   state court to perfect that appeal.  I don't think that affects

22   anything in our request, but I did want to let the Court know

23   that had in fact occurred.

24        Your Honor, this is an unusual situation, because I,

25   frankly, in 26 years of doing this, have not seen a situation

1  where it is as clear on the minute orders as it is in this

2  particular case that his prior attorney testified as a witness

3  for the Government against him.  It is as clear as can be --

4  although, obviously, the Court needed one more piece of

5  evidence than was present in the minute orders, because you

6  don't know that Mr. Stevens was in fact his prior attorney, so

7  that's why I included that information in the motion for

8  statutory sentence in 641.

9         So the procedural background of it is, Mr. Stevens is

10  representing Mr. Riley in a misdemeanor state court case.  That

11  state court case leads to a further investigation by the

12  Arapahoe County authorities.  They then contact Mr. Stevens,

13  who makes various statements to them without consulting his

14  client, without any discussion, without any thought to the

15  rules of professional conduct and attorney-client privilege.

16  And they, then, make charge against Mr. Riley that results in

17  the 08-cr-595.

18         He, then, retains a different attorney for trial, for

19  representation in that case.  That other attorney represents

20  him throughout, as the Court can see in the minute orders, and

21  proceeds through a trial.  You can also see in the minute

22  orders, Your Honor, that there is no motion filed to address

23  whether or not Mr. Stevens should be allowed to testify.  There

24  is no motion filed to address whether or not the information

25  Mr. Stevens provided to the Government should be excised in

1    some manner, should be addressed in any manner.  There is no

2    hearing on this subject, there is no discussion of it

3    whatsoever from any party that we can find from the record.

4         The transcripts have not been -- yet been prepared.

5    That is something that I believe will occur, assuming that the

6    state Court of Appeals grants the right to appeal at this

7    stage, which is in question, obviously, since it has yet to be

8    granted.

9         But under 3553, Your Honor, it's our view that is part

10   of the history and characteristics of the defendant.  Part of

11   what we look at when we look at the criminal history category

12   is the likelihood of someone to reoffend.  And, obviously,

13   something that happens four years ago is much more telling than

14   something that happened 24 years ago, which is why the

15   guidelines take into account the passage of time in assessing

16   whether or not additional criminal history points should be

17   granted or not.

18        So the first thing we look at is, if he committed a

19   crime in 2008 and then these crimes in 2009, it makes it at

20   least at some level more likely that he is going to reoffend,

21   which is why we impose a greater sentence based on the criminal

22   history points.

23        *THE COURT:*  That's under the guidelines.

24        *MR. CANTOR:*  Under the guidelines, correct.  When we

25   look at the case, we can say that based on both Colorado and

1    federal case law, he was deprived of effective assistance of

2    counsel in more or less two manners, both by his prior counsel

3    disclosing material to the government during the course of

4    their investigation without permission, without any thought to

5    the rules of professional conduct, and then in his, if you

6    will, present counsel at that time not taking any steps to

7    protect that, to make a record, to cause the court to have to

8    make rulings, then he is deprived of that counsel -- effective

9    assistance, and he is put in a position where he is essentially

10   unrepresented, if you will.

11        There is no question based just on the minute

12   orders -- the fact that they called Mr. Stevens twice suggests

13   that he's a significant part of their case, at least

14   significant enough that they would call him a second time,

15   which is an unusual act, as the Court well knows from its trial

16   practice -- trial history that the Court has seen.

17        With all of these pieces in place, Your Honor, what it

18   then takes us to is a position where we have to look at, what

19   is a sentence that is sufficient but not greater than necessary

20   in this case under 3553(a) and all of the kinds of sentences

21   available, and taking into account the background and history,

22   along with all of the other issues that are raised in 3553(a).

23   And I would suggest to the Court that if you look at his

24   background, as we indicated in our motion, his longest in

25   custody time ever was approximately 4 months.  Even though the

1    state court sentence was 2 years, as the Court saw, I think the

2    Court is now familiar enough with state court practice in

3    Colorado, that Colorado routinely puts people in custody for

4    significantly less time than their sentence that was granted by

5    the Court.

6         In this particular case, he served about 4 months.  He

7    was then released on what is commonly known as pre-parole or

8    some sort of community status.  What happens is, the Colorado

9    Department of Corrections puts people out in the community on

10   various forms of supervision, but they have not yet been

11   granted parole.  So they are technically a Colorado Department

12   of Corrections prisoner, they are technically in custody,

13   according to Colorado, but it's not actual in custody, the way

14   this court would look at someone in terms of the length of time

15   sitting in a cell in custody.

16        Because of that, Your Honor, if you look at that and

17   compare it to what we have here, he's now been in custody more

18   than twice as long as he's ever been in custody before.  Even

19   though the Court looks at the entirety of Document 647 and his

20   entire criminal history, even though the Court looks at this

21   last conviction in 2008, when we look at it, what we see is

22   that he has spent a significantly longer period in custody in

23   this instance than ever before in his life.

24        In addition to what the Court should have in the

25   objections to the presentence report, in the attachments to

1    that, the Court can see that -- and that's Document 632 -- the

2    Court can see from that -- combining that with the information

3    in the presentence report itself, that he is the father of a

4    number of different children in various age ranges.  Today we

5    provided the Court with a letter from his daughter, who is in

6    her late 20s, who depends on him significantly for support,

7    with raising her son, who lost his father at an early age.

8         We also see that JoAnne Armijo, who is present in

9    court, is his girlfriend, they have a child together.  That

10   child has significant developmental issues and needs great

11   assistance from both Mr. Riley and Ms. Armijo.  She's

12   struggling to keep things going without him and is asking the

13   Court to allow him to return home so that he can assist her

14   further.  And I think that is part of the background and

15   characteristics of the defendant that the Court has to take

16   into account.  The effect on the innocent family members is

17   obviously something that we always want to take some look at to

18   decide how much of a factor that is in a particular case.

19        In this case, Your Honor, we're not looking at a

20   disagreement of 15 or 20 years.  We're not looking at a grave

21   move from one end of the guideline spectrum to another.  We're

22   talking about a relatively short distinction between the two

23   sides and what our views are on this, and the Probation

24   Department.  And I would suggest to the Court that in this

25   particular case, with these particular background and

1    characteristics, that a sentence of time served is sufficient

2    but not greater than necessary to effect the requirements or

3    the thinking of 3553(a) and take into account all of those

4    characteristics.

5         In terms of the deterrence of future conduct, Your

6    Honor, one of the things that we also see is that Mr. Riley has

7    indicated, and he understands, that at his -- from his

8    perspective, more advanced age, he's done with this.  He needs

9    to stop being involved in this kind of thing and raise his

10   family, and he's -- as he put it one of the first times we met,

11   he's too old for this.  He knows it.  He said it himself.  It's

12   not me saying it.  It's not the Government saying it.  It's not

13   even the Court saying it.  He's the one who brought it to my

14   attention.  And I think that suggests that he's someone who

15   gets that he needs to make significantly better choices than he

16   was making in 2009.  And I would ask the Court to take that all

17   into account in assessing the appropriate sentence in this

18   case.

19        Should the Court disagree with me and decide that he

20   deserves a prison sentence of greater length than the 8 months

21   and a day I believe that the Probation Department has

22   calculated, I would then ask the Court to consider requesting

23   the Bureau of Prisons to place him in a halfway house for the

24   remainder of his time.  Given the short length of time the

25   community support that he has, the ties to the community that

1    he has, and the fact that from my -- I believe, if I looked it

2    up correctly, there is no prison camp in the Englewood

3    facility, and it would be a grave difficulty for his mother,

4    Patricia Chapman, who is present in a wheelchair, to be able to

5    visit him at any facility farther away, the Florence facility,

6    any other facility father away.

7         Given those pieces of background, I would ask the

8    Court to consider placing him in a halfway house for the

9    remainder of this time, if the Court disagrees with our

10   assessment.

11        THE COURT:  Thank you.

12        Response.

13        MR. TILL:  Your Honor, the Government opposes the

14   statutory sentence request of the defendant.  The Government's

15   position, Your Honor, is that the defendant is a full grown,

16   mature person.  As shown by the nature of his conviction for

17   his 2008 violation, he really does not have respect for the law

18   or the judicial system.

19        In this particular case, I note in page 16 and

20   paragraph 115, the defendant stated that he stopped using

21   marijuana and cocaine in 2009.  In paragraph 82, his parole or

22   probation officer, Jessica Lee, reported that he tested

23   positive for the use of cocaine shortly before his arrest in

24   this case in January of 2012.

25        Your Honor, the defendant is well known in the

1    community.  His attitude is established.  If the Court grants

2    him less than a guideline sentence, the Government's concerned

3    that it will not promote respect for the law, as the law

4    deserves to be respected.  So we do respectfully ask the Court

5    for a guideline sentence.

6              THE COURT:  Thank you.

7              Any further argument before we move to the defendant's

8    allocution?

9              MR. CANTOR:  Your Honor, I can only advise the Court,

10   when I talked to his parole officer, we had a conversation

11   about some of the significant questions surrounding that test

12   and that test result and whether or not that was a full-on test

13   or it was just, essentially, a dip stick or presumptive test

14   and their lack of follow-up on that.  Obviously, this isn't the

15   day to argue those issues, and she's not present, and we don't

16   have a scientific analysis, but I did want to indicate the

17   Court that it is not as cut and dried as it certainly appears

18   on paper.

19             THE COURT:  Is there any further argument you want to

20   make with regard to sentence before I hear allocution?

21             MR. CANTOR:  No, thank you.

22             THE COURT:  Thank you.

23             Any further argument by the Government before I hear

24   allocution?

25             MR. TILL:  No, Your Honor.  Thank you.

1          THE COURT:  Then, Mr. Riley, what would you like me to

2     know?

3          THE DEFENDANT:  Just that I'm sorry for what had

4     happened and everything.  And you know, I just -- you know, I

5     feel I've, you know, did enough time.  This is more time than

6     I've ever done.  And it's not going to happen to me again,

7     because I can't do this anymore.  This is too much -- too late

8     in the last of my life.  I don't know how much longer I'm going

9     to live or anything like that.  And I have kids that, you know,

10    need me, so I just need to be there for my kids.  You know, I

11    just ask that you have -- take that into consideration for me.

12         THE COURT:  Thank you.

13         Anything else before I announce the sentence I intend

14    to impose?

15         MR. CANTOR:  Nothing, thank you.

16         THE COURT:  Then I'll announce the sentence I intend

17    to impose.  Of course, counsel, you'll have a final opportunity

18    to make legal objections before judgment is entered.  And if

19    you think my reasoning is premised upon error or I raise an

20    issue that you haven't had adequate opportunity to address,

21    then I invite you to request a continuance.

22         This matter is before the Court for purposes of

23    sentencing on two convictions:  Count 10, which is a conviction

24    of violation of 18 U.S.C. Section 922(g)(1) and 924(a)(2) and

25    2; and Count 32, which is a conviction of violation of 21

 1   U.S.C. Section 856(a)(1), (2) and (b) and 18 U.S.C. Section 2.

 2         I identified at the beginning of this hearing the

 3   documents that I had studied in preparation for the hearing.

 4   And counsel advised me that they and the defendant had adequate

 5   opportunity to study those as well, that there were no

 6   additional documents to be considered, and that there were no

 7   factual disputes with either the contents of the plea agreement

 8   or the calculation in the -- I'm sorry, contents of the

 9   presentence report or the calculation of the sentence under the

10   federal sentencing guidelines as set forth in the presentence

11   report.  I take the facts stated in the presentence report as

12   true, and we turn to the calculation under the guidelines.

13         For Count 10, being a prohibited person in possession

14   of a firearm, the Sentencing Commission guideline is that --

15   that is applicable is Section 2K2.1.  It sets the Base Offense

16   Level at 14.  For Count 32, using and maintaining a

17   drug-involved premises and aiding and abetting, the Base

18   Offense Level is set by Section 2D1.8 of the guidelines at 12.

19   Neither of these offenses has specific offense characteristics,

20   victim related adjustments, adjustments for role in the

21   offense, or adjustments for obstruction of justice.  Therefore,

22   they are treated under the multiple count adjustment found in

23   Section 3D1.4 of the guidelines.  For each of the counts, they

24   are treated as having one unit count, for a total number of

25   units of 2.  That is added to the higher of the adjusted

1    offense level, which is 14, which results in a combined

2    adjusted offense level of 16.

3           There is a downward adjustment for acceptance of

4    responsibility, and Mr. Riley gets the maximum downward

5    adjustment for acceptance of responsibility under the

6    guidelines.  That's because Section 3E1.1(a) and (b) have been

7    satisfied.  That's a three-level reduction, which reduces his

8    Total Offense Level to 13.

9           The second portion of the calculation under the

10   guidelines is the criminal history calculation.  His criminal

11   history reflects 24 convictions as an adult, beginning as early

12   as 1983.  Two of these, other than the conviction referenced by

13   defense counsel, are felony convictions.  The conviction that

14   defense counsel refers to in his request for a non-guideline

15   sentence is a recent conviction, 2008, in the state court.  The

16   Court notes, however, that there is another conviction in 2007

17   for which a warrant was issued due to the defendant's failure

18   to appear on two occasions and a subsequent conviction, traffic

19   conviction, of operating an unsafe vehicle in 2011.

20          The total number of criminal history points is only 3,

21   and that's because many of these prior convictions are not

22   serious enough to have points assigned to them, and the two

23   felonies are so old that they are no longer calculated with

24   points under the federal sentencing guidelines.

25          With a criminal history tally of 3 points, Mr. Riley

1    falls into Criminal History Category II.  In Criminal History

2    Category II, with an offense level of 13, the guidelines

3    recommend incarceration of 15 to 21 months, a supervised

4    release period of 1 to 3 years, a fine of 3,000 to $500,000,

5    and there is a mandatory special assessment of $100 per count,

6    here for a total of $200.

7         There is no request for a -- or motion for a departure

8    under the guidelines, but the defendant requests the imposition

9    of a variant or statutory sentence, contending that the Court

10   should take into account his criminal history and little

11   likelihood of recidivism and the fact that his incarceration

12   has an adverse effect on his family, and, finally, given his

13   age, he's not likely to commit any more crimes.  The Government

14   opposes that motion.

15        I will work backwards through the components of the

16   sentence and I'll explain my reasoning with regard to each one.

17        First of all, I intend to impose the special

18   assessment of $200.  It is mandated by statute.  I do not

19   intend to impose a fine, finding that the defendant lacks the

20   ability to pay a fine.  In addition, he has multiple dependent

21   children who would be adversely impacted if a fine were

22   imposed.

23        With regard to supervised release, I intend to impose

24   the recommended term of 3 years on each count to run

25   concurrently.  There has been no argument about supervised

1    release nor about the conditions that have been recommended by

2    the probation officer, and I intend to impose those conditions

3    as well.

4         That takes us to the custodial time period.  The Court

5    is disinclined to impose a variant sentence.  I do not find the

6    issues raised with regard to the most recent felony conviction

7    to compel the imposition of a variant sentence.  It may well be

8    that there were procedural and ethical violations in the

9    representation of Mr. Riley in that case, but the existence of

10   those does not bear upon recidivism.  The fact that he has 24

11   convictions other than that, including two felony convictions

12   and two convictions within the last three or four years,

13   suggests that the pegging of the Criminal History Category at

14   II is not only appropriate, it may be somewhat low.  And as a

15   consequence, I do not intend to vary downward based upon the

16   request related to his criminal history.

17        I take into account that his family is adversely

18   affected by his incarceration.  Quite frankly, that's true with

19   every single person who is incarcerated.  And while his family

20   is here to support him and he recognizes that it adversely

21   affects his family, that is not a factor that is taken into

22   consideration under the espoused factors under 18 U.S.C.

23   3553(a).  The factors that are taken into account are the

24   nature and circumstances of the offense, the history and

25   characteristics of the defendant, the kinds of sentences that

1    are available, the sentence prescribed by the federal

2    sentencing guidelines, the need to avoid unwarranted sentence

3    disparities among defendants with similar records found guilty

4    of similar conduct, and in the appropriate case, the need for

5    restitution.

6         With regard to Mr. Riley's age, the Court takes that

7    into account, but notes that he is still violating the law, and

8    has within the last few years.  Therefore, his age is not

9    indicative of the likelihood of his violation of the law in the

10   future.

11        The statute that applies here is 18 U.S.C. Section

12   3553, and it requires me to impose a sentence that is

13   sufficient but not greater than necessary to satisfy particular

14   objectives:  To reflect the seriousness of the offense; to

15   promote respect for the law; to provide just punishment; to

16   adequately deter criminal conduct; to protect the public from

17   further crimes by the defendant; and to provide the defendant

18   with needed educational or vocational training, medical care,

19   or other correctional treatment in the most effective manner.

20        Considering those objectives and the factors that are

21   set out in the statute, I find the recommended sentence of 15

22   months of incarceration to be the appropriate time that is

23   sufficient but not greater than necessary to satisfy the

24   sentencing objectives.

25        I decline the request to recommend to the Bureau of

1    Prisons that the defendant be placed in a halfway house.  First

2    of all, because recommendations of this type are not binding on

3    the Bureau of Prisons at all.  And, quite frankly, my

4    experience with the Bureau of Prisons is that they don't follow

5    those recommendations very often, and I don't desire to create

6    the impression that there is any expectation that they would in

7    this case.

8             But secondly, given the amount of time that would be

9    left on a 15-month sentence, I do not know whether the Bureau

10   of Prisons would be inclined to incarcerate Mr. Riley in one of

11   its facilities or to continue to avail itself of the assistance

12   of local facilities for completion of the sentence.  But

13   finally, I think Mr. Riley has given up, in the commission of

14   this crime, the sympathy of the Court as to the effect of his

15   incarceration on his family.  I am relatively sure that in the

16   24 convictions he's had thus far, that he has adversely

17   impacted his family.

18            He's indicated he appreciates that the sentence that

19   is imposed is not an extensive sentence, and the incarceration

20   period has been partially -- will likely be partially completed

21   by the time that he is remanded to the care and custody of the

22   Marshal Service in order to be turned over to the Bureau of

23   Prisons.  Therefore, I decline the request for assignment or

24   recommendation of assignment to a halfway house.

25            Any need for clarification, further explanation, or

1    request for a continuance?

2          *MR. TILL:*  Not from the Government, Your Honor.

3          *MR. CANTOR:*  No, thank you, Your Honor.

4          *THE COURT:*  Then pursuant to the Sentencing Reform Act

5    of 1984, having considered all of the provisions of 18 U.S.C.

6    Section 3553(a), it is the judgment of the Court that the

7    defendant, Calvin R.  Riley, be committed to the custody of the

8    Bureau of Prisons to be imprisoned for a term of 15 months on

9    each of Counts 10 and 32, to be served concurrently.

10          Upon release from imprisonment, he'll be placed on

11   supervised release for a term of 3 years on each count, to run

12   concurrently.  Within 72 hours of release from the custody of

13   the Bureau of Prisons, he'll report in person to the probation

14   office in the district to which he is released.  While on

15   supervised release, he'll not commit another federal, state, or

16   local crime, he'll not possess a firearm as defined in 18

17   U.S.C. Section 921, and he'll comply with the standard

18   conditions that have been adopted by the Court.  He'll not

19   unlawfully possess a controlled substance, he'll refrain from

20   any unlawful use of a controlled substance, he'll submit to at

21   least one drug test within 15 days of release on supervised

22   release and at least two periodic tests thereafter, he'll

23   cooperate in the collection of DNA as directed by the probation

24   officer.

25          And in addition, the Court imposes a special condition

1    consonant with the factors enumerated in 18 U.S.C. 3553(a) and

2    3583(d).  He will participate in and successfully complete a

3    program of testing and treatment for substance abuse as

4    approved by the probation officer until such time as he is

5    released from the program by the probation officer.  He will

6    abstain from the use of alcohol and all other intoxicants

7    during the course of the entire supervised release period.  And

8    to the extent that he is able to and directed to by the

9    probation officer, he'll pay for the cost of treatment.

10          He'll pay a special assessment of $200, which is due

11   and payable immediately.  But for the reasons previously

12   specified, no fine is imposed.

13          Mr. Riley, I advise you of your right to appeal this

14   sentence.  If you desire to appeal, a Notice of Appeal must be

15   filed with the Clerk of the Court within 14 days after judgment

16   is entered or you lose your right to appeal.  Ordinarily,

17   Mr. Cantor would file that Notice of Appeal for you; but if for

18   some reason he's unable to or unwilling to do so, you may

19   request and I will direct the Clerk of the Court to immediately

20   prepare and file a Notice of Appeal on your behalf.

21          Is there any further business to bring before the

22   Court?

23          *MR. TILL:*  Not from the Government, Your Honor.

24          *MR. CANTOR:*  No, thank you, Your Honor.

25          *THE COURT:*  Thank you, then, Mr. Till; thank you,

1    Mr. Cantor; thank you to our marshal staff and our court staff.

2    Mr. Riley will be remanded to the custody of the United States

3    Marshal.  That will conclude this matter, and we will stand in

4    recess.

5              (Recess at 2:04 p.m.)

6                     REPORTER'S CERTIFICATE

7        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

8

9        Dated at Denver, Colorado, this 22nd day of August, 2013.

10                          s/Therese Lindblom

11       _____

12                          Therese Lindblom,CSR,RMR,CRR

13

14

15

16

17

18

19

20

21

22

23

24

25